UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SHIELDS,

    Plaintiff,

v.

CHARTER TOWNSHIP OF
COMSTOCK, et. al.,

    Defendants.
_____/

CASE NO. 1:08-CV-85

HON. ROBERT J. JONKER

## OPINION

Plaintiff William Shields, a former member of the Comstock Township Board, brings this action against the Charter Township of Comstock and the various individual members of the Comstock Township Board, alleging violations of 42 U.S.C. § 1983 and Michigan state law. (Amended Complaint, docket # 3.) In particular, Plaintiff claims Defendants violated his First Amendment rights by preventing him, as a member of the Board, from speaking during the time reserved for citizen comment, and by voting to adjourn the meeting before he had finished what he wanted to say as a board member. Defendants move for summary judgment on all claims. (Docket # 12.) The Court heard oral argument on Defendants' motion on December 17, 2008. (Docket # 23.)

## BACKGROUND

This litigation arises out of events at an April 2, 2007 meeting of the Comstock Township Board. Comstock Township ("the Township") is a charter township incorporated under the Michigan Charter Township Act, M.C.L. § 42.1, et. seq. The Township Board ("the Board")

consists of seven members: a Supervisor, Clerk, Treasurer, and four Trustees. Plaintiff Shields was a Trustee until the Township voters recalled him in an August 2008 election. The six individual Defendants in this case were Plaintiff's fellow board members at the time of the April 2 meeting.

The basic facts of the April 2 Board meeting are not in dispute.[1] The meeting lasted just over two hours. In total, Mr. Shields spoke for more than thirty minutes of that time. Much of Mr. Shields's speech did not directly address any specific agenda item, and, by his own admission, he at times "emotionally and vehemently expressed his views." (Plaintiff's Response, docket # 20, at 20.) In the meeting, Mr. Shields repeatedly accused his fellow board members or other Township employees of misconduct. His accusations related to, amongst other things, favoritism in hiring decisions, misuse of Township cell phones and vehicles, and waste of Township funds. Although Mr. Shields spoke for more than one-fourth of the two-hour meeting, he claims Defendants violated his First Amendment rights by (1) refusing to let him speak during the "Citizen Comment" period of the meeting; and (2) adjourning the meeting before he was finished speaking.

## I. The "Citizen Comment" Period

The official agenda for the April 2, 2007 Board Meeting listed ten items for discussion. (Defendants' Brief in Support, docket # 12, Exhibit 7.) The fourth item was "Citizen Comments." According to the Township Supervisor, Defendant Timothy Hudson, the citizen comments period is "reserved for the limited purpose of giving individual members of the public the opportunity to address the elected members of the Township Board with issues of concern." (Defendants' Reply

---

[1] The parties have submitted two DVD's that capture the entire duration of the April 2, 2007 meeting. (Defendants' Brief in Support, docket # 12, Exhibits 1-2; Plaintiff's Response, docket # 20, Exhibit 7.) Defendants' DVD A is the highest quality recording of the meeting, but that DVD excludes the last several minutes of the meeting. Defendants' DVD B and Plaintiff's DVD are identical. Neither side disputes the authenticity of any of the DVD's.

Brief, docket # 22, Exhibit 12, Hudson Affidavit at ¶ 3.)  Plaintiff maintains that the Township had "no written ordinances, policies or rules of any kind regarding citizens' comments at Township Board Meetings," but he does not dispute Defendants' assertion that the purpose of the period was to allow private citizens to communicate with their elected representatives on the Board.  (*See* Plaintiff's Response, docket # 20, Exhibit 1, Shields Affidavit.)

The Board reached the citizen comment agenda item approximately thirty minutes into the April 2 meeting.  By that time, Mr. Shields already had spoken for over twenty minutes on a variety of agenda and non-agenda topics.  Over the next forty minutes the Board heard from ten citizens.  When the last private citizen was finished speaking, Mr. Shields attempted to address the Board.  Defendant Hudson informed Shields that he could not speak during the citizen comment period because that period was reserved for citizen correspondence with the Board.  Mr. Shields replied, "I'm talking as a citizen.  I get my three minutes like a citizen." A brief exchange then ensued between Mr. Hudson, Mr. Shields, and the Township attorney, Kenneth Sparks.  Shields shouted at Hudson, and Hudson replied, "Bill you are out of line, and I'm going to ask you to sit down."

At that point, Mr. Sparks again stepped in and informed the Board that although the period normally was reserved for citizen comments, the Board could amend its agenda to allow Mr. Shields to speak.  Mr. Hudson asked for a motion on whether the agenda should be amended, and Defendant Jeffrey Bogema, a Township Trustee, responded by making a motion to "get on with business." Mr. Shields stated "I move we let me speak.  It's freedom of information and its also my Fourth [sic] Amendment right."  Shields then shouted, apparently to Mr. Hudson, "Did you [inaudible] to uphold the Constitution when you raised your hand for this office? To uphold the United States Constitution? Either do it or get out of the office."  Shortly thereafter, Defendant Bogema's motion

3

was seconded, and it passed by a voice vote. Mr. Shields was the only board member to oppose the motion. The Board then proceeded to the next item on the agenda.

## II.    The Vote to Adjourn

The final item on the April 2 agenda was "Any and All Other Business to come before this Board." After all other business matters had been discussed, the Township attorney suggested that Mr. Shields be allowed to speak under this agenda item since he was not allowed to speak during the citizen comment period. Mr. Hudson indicated that the Board always had allowed member comments during the "Any and All Other Business" period, and he recognized Mr. Shields for this purpose.

Mr. Shields' speech during this time period concerned a variety of topics. He restated his general criticisms of the Board's hiring practices, and accused specific board members of withholding information relevant to the hiring process. He called for the institution of a drug-free workplace program, and questioned why accident reports involving township vehicles were not disclosed to the public. After Mr. Shields had spoken for approximately nine minutes, Mr. Hudson asked for a motion to adjourn. Plaintiff replied "I'm not done yet," but Defendant Chad Mients made a motion to adjourn, and Defendant Bogema seconded that motion. The motion carried by a voice vote. The video is not entirely clear, but it appears that Mr. Shields abstained from the vote. After the motion passed, Mr. Shields stopped talking and the meeting concluded.

## III.    Shields Loses a Recall Election

Following the April 2, 2007 meeting, Mr. Shields continued to attend Township board meetings in his capacity as Trustee. (Defendants' Brief in Support, docket # 12, Exhibit 9.) Defendants contend, and Shields does not dispute, that he was "given every opportunity to speak on

his matters of concern" at all subsequent meetings. (*Id.*, at 9.) The official minute sheets from those meetings indicate that Plaintiff frequently spoke during the "Any and All Other Business" time period, and that he renewed many of the same issues he originally had raised at the April 2 meeting. (*See id.*, Exhibit 9.) Nevertheless, in January 2008 Mr. Shields filed in this Court a complaint against Comstock Township and all the Township board members based on the events of the April 2 meeting. (Docket # 1.) Mr. Shields continued to serve as a Trustee after he filed the complaint.

Sometime after Mr. Shields initiated this lawsuit, a group of Comstock Township citizens submitted a petition to recall him from office. (Defendants' Brief in Support, docket # 12, Exhibit 4.) The Township held a recall election on August 5, 2008. (*Id.*) The recall ballot includes a "Statement of Reasons" for the election that states:

> At the July 2, 2007 meeting of the Comstock Township Board of Trustees, Trustee William G. Shields accused fellow board members of corruption, abuse of power, and failure to carry out the duties of their offices. Trustee William G. Shields filed a federal lawsuit against the Charter Township of Comstock on January 25, 2008. Trustee William G. Shields filed a federal lawsuit against each member of the Comstock Township Board of Trustees on January 25, 2008. . . .

(*Id.*) The recall ballot also includes a "Justification of Office" in which Mr. Shields states:

> I have not broken any local, state or federal laws.  I want accountability; items bid out, interviews, background checks, drug tests for employees, lifeguards, vehicles lettered.  I want township vehicles not used for personal use or snowplowing.  When I brought these concerns to the Board's attention they didn't want to talk about them. I was denied the right to speak during Citizen Comments and the Board voted on it. This was a Federal violation and the reason for the lawsuit.  When I have pointed out the corruption and their lack of concern the Administration didn't like it, thus the reason for recalling me. . . .

(*Id.*) Mr. Shields lost the recall election and was subsequently removed from office. (*See id.*)

5

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir.2007); FED. R. CIV. P. 56. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**ANALYSIS**

Plaintiff claims Defendants are liable under 42 U.S.C. § 1983 for violating his First Amendment rights at the April 2, 2007 Board meeting. (Amended Complaint, docket # 3, Count I.) Plaintiff seeks damages and an injunction against "further restraints upon protected First Amendment Speech." (*Id.* at ¶ 48.) Because the Comstock Township voters already have recalled Plaintiff from office, and Plaintiff no longer serves on the Board, there is no longer a justiciable controversy over potential injunctive relief. *See, e.g.*, *Operation King's Dream v. Connerly*, 501 F.3d 584, 591 (6th Cir. 2007). Accordingly, only Plaintiff's claims for damages are ripe for decision.[2]

---

[2] Plaintiff's Amended Complaint also includes claims under the Michigan Constitution and the Michigan Political Activities by Public Employees Act, M.C.L. § 15.401, et. seq. (Docket # 3, Counts II-III.) However, Plaintiff expressly abandoned the statutory claim in his Response Brief (docket # 20, at 27), and he makes no effort to develop the state constitutional claim in any of his filings. Plaintiff mentions the constitutional claim only once in his entire Response Brief, and that is only to note that, "The same arguments above apply to plaintiffs [sic] claims under the Michigan Constitution." (Docket # 20, at 21.) Because Plaintiff fails to differentiate in any way between his

**I.     Legal Framework**

Numerous federal courts have addressed the tension between a public body's interest in conducting an orderly and efficient meeting without fear of judicial intrusion, and a private citizen's interest in speaking freely to his or her elected representatives. *See*, *e.g.*, *Hansen v. Westerville City School Dist. Bd. of Educ.*, 43 F.3d 1472, at *11-12 (6th Cir. 1994) (table opinion) (collecting cases); *see also Timmon v. Wood*. 2008 WL 1808815 (W.D. Mich. 2008) *aff'd*, No. 08-1667 (6th Cir. Jan. 21, 2009). Both interests are important. The private citizen, by definition, generally has no official power to participate in the public body's decision-making process. When the body opens that process to the general public and allows input from the individual members of the community, the private citizen has a right to expect a fair and respectful hearing even if–maybe even *especially* if–the message is critical of the body. The First Amendment protects that right, while still accommodating the body's need to conduct its business efficiently, by allowing reasonable and content-neutral restrictions on speech. *Hansen*, 43 F.3d at *11 (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

The content-neutral time, place, and manner standard strikes a careful balance between the private citizen's right to speak and the public body's need to govern. The policy issues are different however, for someone like Plaintiff Shields. Plaintiff was a co-equal member of the body that he seeks to hold liable, and his suit alleges that his fellow board members injured him by doing precisely what elected board members are supposed to do: namely, argue with each other over policy

---

state and federal claims, the Court will analyze both claims under existing federal case law interpreting 42 U.S.C. § 1983 and the First Amendment, and will deem any other potential state constitutional theory of relief waived for lack of development. *See U.S. v. Sandridge*, 385 F.3d 1032, 1035 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

issues, form majority coalitions, vote on substantive and procedural issues, and be held politically–not judicially–accountable by the voters. Unlike an ordinary citizen, Plaintiff had the right to, and in fact did, participate directly in the decision-making process on the very motions he alleges injured him. A private citizen sometimes needs to hold a public body judicially accountable to ensure that government hears the voice of its citizens, but the predominant method of accountability for elected officials is political, not judicial. That is exactly what happened here. Plaintiff used his platform as a board member to argue his position with the passion and vigor that often exemplifies local politics. Ultimately, he was unable to persuade either his fellow board members, or the Comstock Township citizens who recalled him from office, of the merits of his viewpoints. His "injury" was a political setback for sure, but the federal courts are not the forum for redressing political injuries. Accordingly, even if Plaintiff could prove that his fellow board members redirected his comments or adjourned the meeting because they did not like the substance of his speech or were just sick of hearing him speak altogether, Plaintiff, as an elected official, still cannot state a First Amendment claim against his former colleagues or the Township they represent.

## II. Plaintiff Cannot Establish a Constitutional Violation

Plaintiff claims Defendants violated his First Amendment rights because the Township Board (1) refused to amend its agenda to allow him to speak during the citizen comment period; and (2) adjourned the meeting before he finished speaking. Plaintiff argues that these actions constitute unlawful viewpoint discrimination because the individual board members acted with a constitutionally impermissible purpose: namely, to suppress Plaintiff's speech.

A governmental body has significant discretion to regulate its own meetings in the manner it sees fit. *See, e.g., City of Madison, Joint Sch. Dist. No. 8 v. Wis. Employment Relations Comm'n*,

429 U.S. 167, 175 n.8 (1976) ("Plainly, public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business."); *Cf.* M.C.L. § 42.7 (a township board "shall determine its own rules and order of business"). Limitations on speech must be "reasonable and viewpoint neutral, but that is all they need to be." *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811, 814 (W.D. Mich. 1999) (quoting *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995)). Accordingly, a public body does not violate the First Amendment when it limits speech to a certain topic or time period in a public meeting. *Kindt*, 67 F.3d at 271-72; *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) ("[A] City Council meeting is . . . a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with.").

To the extent Plaintiff challenges the Board's authority to regulate the citizen comment period or adjourn the meeting, that challenge fails because the Board's actions fit comfortably within the scope of the reasonable time, place, and manner restrictions routinely upheld as part of a public body's authority to regulate its own meetings. *See*, *e.g.*, *Kindt*, 67 F.3d at 271-72; *White*, 900 F.2d at 1425. Nevertheless, Plaintiff also argues that the manner in which the Board exercised its lawful authority violated his First Amendment rights because the individual board members acted with improper motives. In effect, Plaintiff asks this Court to speculate as to each board member's true impetus for voting the way they did on two properly raised procedural motions in an ongoing public meeting. This is exactly the type of inquiry the Supreme Court has instructed federal courts to refrain from engaging in. *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951) ("In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies.").

The *Tenney* directive takes on particular importance here because Plaintiff is an elected member of the very body he seeks to hold liable. Plaintiff's policymaking power is equivalent to that of his fellow board members, and he had a full and fair opportunity to vote on the procedural motions that allegedly injured him. As a result, Plaintiff stands on much different footing than an ordinary citizen who desires to speak at a public meeting. The First Amendment provides the private citizen with an important bulwark against government power, but it does not immunize an elected official from the ire of his political adversaries. As the Sixth Circuit stated in *Zilich v. Longo*:

> A legislative body does not violate the First Amendment when some members cast their votes in opposition to other members out of political spite or for partisan, political or ideological reasons. Legislators across the country cast their votes every day for or against the position of another legislator because of what other members say on or off the floor or because of what newspapers, television commentators, polls, letter writers, and members of the general public say. We may not invalidate such legislative action based on the allegedly improper motives of legislators.

34 F.3d 359, 363 (6th Cir. 1994).

Even if Plaintiff could establish that his fellow board members voted against him because they did not like what he was saying on the floor of the April 2, 2007 meeting, such a showing would not entitle him to recover monetary damages from his colleagues or from the Township that he and they collectively represent.[3] *See Zilich*, 34 F.3d at 363. Plaintiff is an elected representative of Comstock Township, and he is expected to speak out on issues important to his constituents. In the course of discharging this duty, political opposition inevitably will arise. Opposition may form

---

[3] Each of the individual board member defendants have submitted affidavits swearing that they voted against Plaintiff for reasons unrelated to the content of his speech. (Defendants' Reply, docket # 22, Exhibits 12-17.) Plaintiff presents no evidence to rebut these affidavits, but he nevertheless maintains that because he was critical of the Township and some members of the Board,"[a]ll of the individual defendants . . . had a motive to cut off or suppress [his] speech." (*See* Plaintiff's Response, docket # 20, at 21.) As discussed in more detail below, the Court's analysis of Plaintiff's First Amendment claim does not turn on the motives of the individual board members.

based in whole or in part on the content of Plaintiff's public statements. That is the very essence of politics. Plaintiff has no more of a First Amendment claim than does a United States Senator whose political opposition triggers a filibuster to prevent or delay him from speaking on the Senate floor. Politics can be a frustrating and humbling experience, but "[t]he First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering." *Id.* Plaintiff cannot use the federal courts to prevent his political opponents from targeting him because of public statements he made in his capacity as an elected official. *See id.*; *Whitener v. McWatters*, 112 F.3d 740, 744-45 (4th Cir. 1997) (rejecting the argument that "legislative censure is unconstitutional if motivated by something the member said").

Although Comstock Township, as a municipal entity, does not enjoy the protection of legislative immunity that covers the individual board members, *see Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc), the policies underlying that doctrine are instructive here because Plaintiff Shields is a member of the legislative body he seeks to hold liable. In *Whitener*, a county board member sued his fellow board members for their collective decision to discipline him for abusive language. 112 F.3d at 741. The plaintiff board member argued that he was actually disciplined because he harbored an unpopular voting position on the board. *Id.* at 744. The Fourth Circuit analyzed the history of legislative immunity and held that the board member defendants were immune from suit because they disciplined or punished their fellow member for his "legislative conduct." *Id.* The court there stated:

> While [plaintiff] was arguably disciplined for speech, it was legislative speech, which is protected from executive, or in the United States, judicial interference, but not from the legislative body's judgment. As legislative speech and voting is protected by absolute immunity, the exercise of self-disciplinary power is likewise protected.

*Id.*; *see also Larsen v. Senate of the Commonwealth of Pennsylvania*, 152 F.3d 240 (3d Cir. 1998).

The holdings in *Zilich* and *Whitener* are consistent with other courts' attempts to limit the judiciary's intrusion into the politics of legislative decision-making. In *Hogan v. Township of Haddon*, the District of New Jersey applied the Supreme Court's recent decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and held that an elected official received no First Amendment protection when she spoke as part of her official employment duties. 2006 WL 3490353, *6-7 (D.N.J. 2006), *aff'd*, 278 Fed. Appx. 98 (3d Cir. 2008). In *Garcetti*, the Supreme Court held that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." 547 U.S. at 421-22. The *Hogan* Court reasoned that, under *Garcetti*, a township commissioner's letters to a township-owned newspaper were not protected speech. 2006 WL 3490353, *5-6. Consequently, plaintiff could not sustain a First Amendment retaliation claim based on speech contained in those letters. *Id.* at *6-7; *accord Hartman v. Register*, 2007 WL 915193, at *7 (S.D. Ohio 2007) ("The distinction between the public employee in *Garcetti* and an elected official, in this case Plaintiff, is inconsequential."). As a board member, Plaintiff Shields may not technically have been an employee of the Township, but he surely was a representative of the Township, and the concerns underlying *Garcetti* apply with equal force to his situation. *See id.*

As an elected member of the Township Board, Plaintiff must submit to the Board's power to discipline its own members for their "legislative speech." *See Whitener*, 112 F.3d at 744. Plaintiff was not the subject of formal disciplinary proceedings in this case, but the Board's power to discipline necessarily subsumes the power to force Plaintiff to acquiesce in the Board's collective decisions regarding the process of an ongoing meeting. Unlike an ordinary citizen, Plaintiff

represents the Township when he speaks at a public board meeting. Thus, his constitutional rights are more analogous to the employee in *Garcetti* than to a private citizen sitting in the audience. *See Hogan*, 2006 WL 3490353, *5-6; *Hartman*, 2007 WL 915193, at *7. The Board must be able to take into account the content of Plaintiff's speech when deciding whether to discipline him, or more routinely, whether to move onto another agenda item or adjourn the meeting entirely. To rule otherwise would allow one elected official to hold captive a legislative body and force his or her political adversaries to remain silent while the official denounces them or simply turns the conversation to irrelevant matters. The First Amendment allows Plaintiff to pursue aggressively this approach on the campaign trail, but it does not require that he be afforded free reign to do so in every public meeting. *Cf. Kindt*, 67 F.3d at 269 ("Citizens are not entitled to exercise their First Amendment rights whenever and wherever they see fit."); *Collinson v. Gott*, 895 F.2d 994, 1006 (4th Cir. 1990) (Wilkinson, J. concurring) ("At times, however, even the champions of democracy need to be ruled out of order on the merciful march to adjournment. I shudder to think how long some public meetings will drag on if speakers can threaten § 1983 suits unless they are heard to the end.").

Plaintiff received ample time to speak at the April 2007 Board meeting. He does not identify any topic of discussion he was prevented from exploring during the more than thirty minutes that he held the floor. He alleges only that he should have been allowed to speak for longer and at different times in the meeting. Plaintiff argued this point at the meeting, and he had a full and fair opportunity to vote when the question was posed to the Board. Ultimately, Plaintiff failed to persuade his colleagues that his extended comments were worthy of further discussion, and he was outvoted on two properly raised procedural motions. The First Amendment does not allow Plaintiff to transform this political defeat into a civil damages action merely because some members of the Board may

have disagreed with the substance of his allegations. *See Zilich*, 34 F.3d at 363. Plaintiff may question his former colleagues' motives in the court of public opinion, but he cannot state a First Amendment claim here. *Cf. Tenney*, 341 U.S. at 789 (stating that "[s]elf-discipline and the voters must be the ultimate reliance" for testing the merits of a legislator's legislative conduct).

The decisions discussed above all support the conclusion that Plaintiff Shields cannot prevail on his First Amendment claim in this case. As the Supreme Court has stated, it is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Tenney*, 341 U.S. at 376. This general prohibition applies with particular strength, where, as here, the Court would be forced to interject itself into a political dispute between co-equal members of a municipal legislative body. *Cf. Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 28 (1st Cir. 1996) (noting that state legislative immunity "implicates principles of comity and federalism") (internal quotations omitted). Judicial intrusion would be especially disquieting and inappropriate here, because the ultimate source of all political power in the Township–the voters–already have resolved the controversy against Plaintiff Shields by recalling him from office. Consequently, Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim.

### III. Plaintiff Fails to Identify an Unconstitutional Policy or Practice Attributable to Comstock Township In Any Event

Plaintiff alleges that Comstock Township is liable under 42 U.S.C. § 1983 because the Township has a policy or practice of unlawfully suppressing the speech of those who are critical of Supervisor Hudson or the Township. (Amended Complaint, docket # 3, at ¶ 46.) To prevail on this claim, Plaintiff must show that his constitutional rights were violated, and that the violation was a

"direct result" of the Township's official policy or custom. *See Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)).

A governmental entity may be held liable under 42 U.S.C. § 1983 only where the plaintiff shows "an unconstitutional action that implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Scarbrough v. Morgan County Bd. of Ed.*, 470 F.3d 250, 261 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). A single action can constitute official policy if the decisionmaker, in this case the Board, acts with governmental authority. *Id.* at 262. All parties agree that the Board had authority to act on behalf of the Comstock Township. *Cf.* M.C.L. § 42.5.

Plaintiff does not mount a facial attack on any official ordinance or policy of the Township, nor does he identify a pattern of repeated conduct that would establish a "custom" or "practice" within the meaning of *Monell*. Plaintiff's claim against the Township is premised entirely on the allegedly unlawful acts of the individual board members in voting on two procedural motions in an ongoing meeting. The Court already has ruled that the votes were not an unconstitutional suppression of Plaintiff's First Amendment rights. That ruling alone entitles the Township to summary judgment in its favor, *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) ("Where, as here, a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm."), but even if there was a constitutional violation, that violation would not amount to a policy or practice that could form the basis for municipal damages liability.

Plaintiff argued his position and lost on two procedural votes. The Board moved on to other business after the first vote, and Plaintiff was allowed to speak again during the meeting. In total,

Plaintiff spoke for longer than any other citizen or board member. Even after the second procedural vote–the adjournment–Plaintiff was allowed to speak freely as a board member at later board meetings, until the voters recalled him from office. Votes on two isolated procedural motions cannot, standing alone, constitute a municipal policy or practice for constitutional liability purposes. Such votes are necessarily *ad hoc* decisions that take into account the unique particulars of a specific moment in time: how hot or cold is the room; how long has the meeting been going; do people need a break; how late is it; what is left to cover at the meeting; what has already been covered; and any number of other intensely practical and situational factors. A vote on whether to modify a particular agenda or to adjourn a particular meeting is no more a policy decision of the Board than is a decision on whether to have turkey or chicken for dinner on a particular night. Consequently, even if Plaintiff could establish a First Amendment violation, the Township still would be entitled to summary judgment in its favor.

### IV.     The Individual Board Member Defendants are Entitled to Legislative Immunity in Any Event

Local legislative officials have absolute immunity from § 1983 claims arising out of their legislative activities. *Bogan v. Scott Harris*, 523 U.S. 44, 49 (1998); *Collins v. Village of New Vienna*, 75 Fed. Appx. 486, 487 (6th Cir. 2003). Legislative immunity ensures that an official's exercise of his or her legislative discretion will "not be inhibited by judicial interference or distorted by the fear of personal liability." *Bogan*, 523 U.S. at 52; *see also Tenney v. Brandhove*, 341 U.S. 367, 372-73 (1951). This immunity protects legislative officials at all levels of government, but it applies with especially strong force to local legislators like the individual board member defendants in this case because "the time and energy required to defend against a lawsuit are of particular

concern at the local level, where the part-time citizen-legislators remains commonplace." *Bogan*, 523 U.S. at 52; *accord Timmon v. Wood*, 2008 WL 1808815, at *5 (W.D. Mich. 2008), *aff'd*, No. 08-1667 (6th Cir. Jan. 21, 2009). Without the protection of legislative immunity citizens would face a significant deterrent to service in local government, "where prestige and pecuniary rewards may pale in comparison to the threat of civil liability." *Bogan*, 523 U.S. at 52.

Legislative immunity applies to "all actions taken in the sphere of legitimate legislative activity." *Id.* at 54. Whether an act falls into the sphere of legislative activity "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* Voting on proposed legislation is "quintessentially legislative," but an official need not be engaged in formal lawmaking to receive legislative immunity. *See id.* at 55; *see also R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 438 (6th Cir. 2005). To protect the integrity of the legislative process, immunity applies to all "integral steps" within that process. *Bogan*, 523 U.S. at 55. If an act is a necessary prerequisite to the legislative process, a legislator must be afforded immunity for claims arising out of that act. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503-04 (1975) (issuing a subpoena is a legislative act because legislators need information to legislative effectively); *accord Timmon*, 2008 WL 1808815, at *5-6 (presiding over a public-comment period at a city council meeting is a legislative act because it implicates the council's information-gathering function).

In this case, Plaintiff alleges that each and every member of the Board violated his First Amendment rights by (1) voting in support of Defendant Bogema's motion to "get on with business" at the end of the citizen comment period; and (2) voting in support of Defendant Meint's motion to adjourn the meeting. Both of the complained of acts are "legislative activities" within the meaning of *Bogan*. Indeed, voting is the "quintessential[] legislative" activity. *Bogan*, 523 U.S. at 55. While

not every act requiring a vote is necessarily entitled to absolute immunity, *see Abraham v. Pekarski*, 728 F.2d 167, 174 (3d Cir. 1984), the board members' votes in this case are entitled to such immunity because they represent an "integral part of the deliberative and communicative process." *See Eastland*, 421 U.S. at 504. Indeed, the Township Board cannot even begin to exercise its official lawmaking duties without first navigating the channels through which legislation is proposed, debated, and enacted. The votes at issue in this case were meant, at least facially, to accomplish exactly that purpose. *Cf. Tenney*, 341 U.S. at 376 ("The claim of unworthy purpose does not destroy the [legislative] privilege."). Consequently, the board members are entitled to absolute legislative immunity for injuries alleged to have resulted from those votes. *See id.*; *Bogan,* 523 U.S. at 55.

As this Court held in *Timmon*, a legislator's efforts to oversee and guide a public comment period are "legislative acts" because those efforts advance the legislative body's fundamental lawmaking function. *See* 2008 WL 1808815, at *6; *see also Hogan v. Township of Haddon*, 2006 WL 3490353, at *4 (D.N.J. 2006) ("Refusing to allow someone to speak in order to keep a meeting on schedule is the type of legislative act immunity is afforded to."), *aff'd*, 278 Fed. Appx. 98 (3d Cir. 2008). Michigan state law supports application of the *Timmon* rationale to the facts of this case. The Michigan Charter Township Act ("MCTA") vests "all legislative authority and powers" of a township with the township board, and directs the board to "determine its own rules and order of business." M.C.L. §§ 42.5, 42.7. In setting and enforcing an official agenda in an ongoing public meeting, the board member defendants were acting well within the wide scope of legislative authority granted by the MCTA. Plaintiff may question Defendants' motives for exercising their legitimate legislative authority in a particular fashion, but that inquiry is irrelevant to the issue of legislative immunity. *See Bogan*, 523 U.S. at 54-55; *Tenney*, 341 U.S. at 376.

The board members' actions in the April 2 meeting were integral steps in the deliberative and communicative process by which they participate in legislative meetings. *See Eastland*, 421 U.S. at 504. Accordingly, those acts are "legislative" within the meaning of *Bogan*, and the individual board members are entitled to absolute immunity from civil suits based on those actions. *See* 523 U.S. at 55; *see also Timmon*, 2008 WL 1808815, at *6. Consequently, even if Plaintiff could establish a constitutional violation, the individual board- member defendants still would be entitled to summary judgment in their favor.

## CONCLUSION

Defendants' Motion for Summary Judgment (docket # 12) is granted. Plaintiff's claims are dismissed with prejudice.

Dated:   May 27, 2009             /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  UNITED STATES DISTRICT JUDGE